**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| § | **CRIMINAL NO. H-12-623-1** |
| **v.** § | |
| § | |
| **AZZIE LADAWN CALDWELL** § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas and Nancy G. Herrera, Assistant United States Attorney, and the defendant, Azzie Ladawn Caldwell, and the defendant's counsel, Genesis Draper, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

**The Defendant's Agreement**

1. The defendant agrees to plead guilty to Count Two of the Indictment. Count Two charges defendant with importation of a controlled substance into the United States, namely, less than 500 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II

controlled substance, in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1) and (b)(3).

2. The defendant, by entering this plea agrees that she is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The statutory penalty for a violation of Title 21, United States Code, Sections 952(a), and 960(a)(1) and (b)(3) is imprisonment for not more than twenty (20) years, and a fine of $2,000,000. Additionally, the defendant shall receive a term of supervised release after imprisonment of at least three (3) years. Title 21, United States Code, Section 960 (b)(3).

Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release imposed as part of her sentence, then defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, U.S.C. §§ 3559(a)(2) and 3583(e)(3). Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for

parole.

## Mandatory Special Assessment

3.     Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction for a total payment of one hundred dollars ($100.00).   The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Fine and Reimbursement

4.     Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the United States for the costs of any imprisonment or term of supervised release; if any is ordered.

5.     Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.

6.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to

sentencing if she is requested to do so.   In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following her sentencing. Further, the Defendant agrees to full restitution to the victim(s) regardless of the counts of conviction.

## Proffer

Not later than at the time of sentencing, the defendant further agrees to truthfully provide to the United States all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.

## Waiver of Appeal

8.      Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest her conviction or sentence by means of any

post-conviction proceeding.

In exchange for the Agreement with the United States, Defendant waives all defenses based upon venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not timely barred on the date this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or ( c) Defendant's guilty plea is later withdrawn.

9.     In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from her counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce her guilty plea, and is not binding on the United States, the Probation Office or the Court.   The United States does not make any promise or representation concerning what sentence the defendant will receive.   Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.   *United States v. Booker*, 125 S.Ct. 738 (2005).   Accordingly, Defendant

understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

11. The United States agrees to each of the following:

(a) If the defendant pleads to Count Two of the Indictment and persists in that plea through sentencing, and the court accepts this plea agreement, the United States will dismiss the remaining charge at the time of sentencing;

(b) At the time of sentencing, if recommended by the United States Probation Office, the United States agrees to join in the defendant's anticipated request to the Court that she receive a two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) for acceptance of responsibility as contemplated by the Sentencing Guidelines; and

(c) If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees to join in defendant's anticipated request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding her role in the offense if the defendant's offense level is 16 or greater.

## United States' Non-Waiver of Appeal

12.    The United States reserves the right to carry out its

responsibilities under the sentencing guidelines sentencing.   Specifically,

the United States reserves the right:

(a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office;

(d)    to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a); and,

(e)    to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13.    Defendant is aware that the sentence will be imposed after

consideration of the United States Sentencing Guidelines and Policy

Statements, which are only advisory, as well as the provisions of Title 18,

U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that

the Court has authority to impose any sentence up to and including the

statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14. Defendant represents to the Court that she is satisfied that her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a)    If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the

court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court.

(c)    At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, she could testify on her own behalf.

## Factual Basis for Guilty Plea

15. Defendant is pleading guilty because she is guilty of the charges contained in Count Two of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

(a)    On Sunday, Sept. 16, 2012 at approximately 12:17p.m., Azzie Ladawn Caldwell, a U. S. citizen, and Indira Doorga, a citizen of Trinidad and Tobago, arrived at Bush Intercontinental Airport (Bush IAH), Houston, Texas aboard United Airlines flight 1459 from Piarco International Airport, Trinidad and Tobago, en route to Detroit, Michigan.

(b)    Caldwell was referred for baggage examination to search for potential prohibited items on her person or in her luggage. CBP Officer (CBPO) Joe

Page 9 of 17

Pena conducted the baggage search and interview of Caldwell.

(c)   The CBPO noticed that Caldwell had a worried facial expression, her hands were shaking, she appeared very nervous and would not make eye contact with him.   In response to questions about her purpose in traveling to Trinidad, Caldwell told the CBPO she had traveled alone to Port of Spain Trinidad to visit a friend –"Indira Doore".

(d)   Initially, Caldwell claimed she had meet "Doore" on Facebook, then immediately changed her story to state that she knew "Doore" from her previous employment at the Marriot Hotel in Miami six years before and that they kept in contact via Facebook.   Caldwell claimed she had decided to visit "Doore" on vacation for one week.

(e)   While interviewing Caldwell, CBPO J. Pena was approached by CBPO Robert Pena, also a baggage control officer, who was processing Indira Doorga.   CBPO Robert Pena told CBPO J. Pena Doorga had arrived aboard the same flight as Caldwell from Trinidad and he believed they had travelled together.

(f)   CBPO J. Pena again asked Caldwell whether she was traveling alone. This time, Caldwell admitted she was traveling with Indira Doorga.

(g)   At baggage inspection, Doorga had told CBPO R. Pena and CBPO M. Anzaldua that she was traveling alone to Detroit, Michigan for her friend "Rhonda Ervin's" wedding.   Doorga claimed she had met her friend "Rhonda" while when they had been co-workers at the Marriot Hotel in Miami in 2006, and had known each other for six years.   Doorga had "Rhonda Ervin's" name and address written down on a page of a small notepad and had to refer to it correctly provide her friend's last name.   The address was listed on Doorga's Customs Declaration form as her final destination.   This same name and address - Rhonda Ervin at 20246 Fleiming, Detroit, Michigan – and telephone number (313) 348-8960 - was found in Caldwell's possession.

(h)   After Doorga voluntarily admitted to be internally carrying narcotics, CBPO R. Pena signaled CBPO J. Pena to relay the message that Doorga was, in fact, internally carrying narcotics.

(i)    CBPO J. Pena then told Caldwell that due to inconsistencies in her story, she was suspected of smuggling narcotics and a pat down would be conducted. Caldwell then admitted to CBPO J. Pena that she was smuggling cocaine vaginally and internally.

(j)    Caldwell was escorted her to secondary and placed in a holding cell pending a patdown.

(k)    A patdown was conducted by CBPO Kortlang at 2:05 p.m. At 2:06 Caldwell removed a cylindrical package which had had been in Caldwell's vaginal canal. A few minutes later, Caldwell asked to use the bathroom. Caldwell passed four small plastic wrapped pellets. A field test of one of the subsequently passed four pellets proved positive for cocaine.

(l)    Caldwell and Doorga were transported to the Houston N. W. Medical Center where x-rays showed both women had foreign objects throughout their abdominal cavities. Both women were admitted to the hospital and executed documents waiving their right to appear before a Magistrate Judge within 48 hours.

(m)    Including the vaginally inserted object and the four pellets expelled at the airport, Caldwell expelled a total of 37 pellets weighing more than 500 grams gross weight, samples of which field test positive for cocaine. A chemical analysis by a forensic chemist of the U.S. Customs and Border Protection Laboratory confirmed the substance was cocaine with a net weight of 482.62 grams.

(n)    In a post-arrest statement to an HSI special agent, co-defendant Doorga told agents she had accepted Caldwell's offer to import cocaine into the United States in exchange for $20,000 in Trinidad and Tobago currency.

(o)    Doorga told agents she and Caldwell met for the first time in Trinidad on Sept. 9, 2012 upon her arrival at the airport. They were introduced by Doorga's boyfriend.

(p)    Two days later, Doorga agreed to Caldwell's offer which lead to

the purchase of an airline ticket for Doorga in cash to travel to Detroit, Michigan on Sept. 16, 2012 and a change in return travel date for Caldwell from Sept. 23 to Sept. 16, which Caldwell charged to a credit card.

(q)     On Saturday, Sept. 15, while at Caldwell's rented apartment in Trinidad, she and Doorga ingested the pellets containing cocaine and inserted the cylindrical object containing cocaine.

(r)     Doorga and Caldwell traveled together to the United States aboard the flight bound for Detroit. Doorga further admitted she did not know anyone named "Rhonda Ervin" explaining that Caldwell had given her the piece of paper with "Rhonda's" name and address on it to repeat if she was confronted by police. Doorga had entered this Detroit address on her Customs Declaration form as her final destination but expected to stay with Caldwell until the cocaine filled pellets were expelled, she was paid and could return to Trinidad.

(j)     CBPO also seized $7804 in U. S. currency from Caldwell which constitutes proceeds of and/or intended to facilitate the importation of a controlled substance.

## Breach of Plea Agreement

16.     If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand.  If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then may move the Court to set aside the guilty plea and

Page 12 of  17

reinstate prosecution.   Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived there from, will be used against defendant in any prosecution.

17.   Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

### Forfeiture

18.   This plea agreement is being entered into by the United States on the basis of defendant's express representation that she will make a full and complete disclosure of all assets over which she exercises direct or indirect control, or in which she has any financial interest.   Defendant agrees to forfeit whatever interest she may have in assets related to narcotics trafficking, including the $7804.00 listed in the Indictment.

19.   Defendant consents to any agreed order of forfeiture or judgment, and further agrees to take all steps necessary to pass clear title to forfeitable assets to the United States, including, but not limited to, surrendering of title, signing a consent decree, stipulating facts regarding

the transfer of title and basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of defendant's assets to deliver all funds and records of such assets to the United States.

## Complete Agreement

20. This written Plea Agreement, consisting of 17 pages, including the attached addendum of defendant and her attorney, constitutes the complete agreement between the United States, defendant and her counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement executed by the parties. Defendant acknowledges that no threats have been made against her and that she is pleading guilty freely and voluntarily because she is guilty.

21. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____November 26_____, 2012.

_____
**Azzie Ladawn Caldwell**
**Defendant**

Page 14 of 17

Subscribed and sworn before me on _November 26_, 2012.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____

**Deputy United States District Clerk**

APPROVED:

**KENNETH MAGIDSON**
**United States Attorney**

By: _____        _____
Nancy G. Herrera                                  Genesis Draper
Assistant United States Attorney         Attorney for Defendant

Page 15 of 17

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 12-CR-623-1 |
| | § | |
| AZZIE LADAWN CALDWELL | § | |

### PLEA AGREEMENT - ADDENDUM

I have fully explained to defendant her rights with respect to the pending Indictment. I have reviewed the provision of the United States Sentencing Commission's Guideline Manual and Policy Statements and I have fully and carefully explained to Defendant the provision of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Genesis Draper
Attorney for Defendant

__11/26/12__
Date

Page 16 of   17

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 12-CR-623-1 |
| AZZIE LADAWN CALDWELL | § | |

## PLEA AGREEMENT - ADDENDUM

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.   My attorney has fully explained and I understand all my rights with respect to the provision of the United States Sentencing Commissions <u>Guidelines Manual</u> which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

**Azzie Ladawn Caldwell**
**Defendant**

**Date**

Page 17 of   17